UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JON R. MacFARLANE, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Docket No. 07-132-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the questions whether the administrative law judge erred in relying on the Medical-Vocational Guidelines rather than the testimony of a vocational expert, whether he was required to consult a medical expert about the date of onset of the plaintiff's disability and whether the residual functional capacity he assigned to the plaintiff was based on substantial evidence. I recommend that the commissioner's decision be vacated and the case remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured for SSD purposes from January 1, 2003 through December 31, 2004, Finding 1, Record at 16; that before December 31, 2004 he suffered from

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on February 29, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

1

the severe impairments of low back and neck pain, irritable bowel syndrome and a history of alcohol abuse, Finding 3, *id*.; that these impairments, considered singly or in combination, did not meet or equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Finding 4, *id*.; that the plaintiff's testimony regarding pain and limitations was not well supported by the medical evidence and was not credible to the extent of establishing an inability to work on or before December 31, 2004, Finding 5, *id*.; that from January 1, 2003 through December 31, 2004 the plaintiff retained the residual functional capacity for light work, as he could sit, stand and walk for at least six hours each in an eight-hour work day and lift or carry twenty pounds occasionally and ten pounds frequently, Finding 6, *id*.; that this residual functional capacity was reduced by nonexertional limitations that made it difficult for the plaintiff to do high-stress work, work that required constant interaction with others, or work that did not allow him reasonable access to a bathroom, *id*.; that in the relevant period he was unable to perform his past relevant work, Finding 7, *id*.; that, using Rules 202.21 and 202.18 of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid"), as a framework for decision making, the plaintiff retained during the relevant period the residual functional capacity to perform unskilled light and sedentary jobs that existed in significant numbers in the national economy, as his nonexertional limitations only slightly restricted the range of work he was able to perform, Finding 8, *id*.; and that he accordingly was not under a disability, as that term is defined in the Social Security Act, at any time during the relevant period, Finding 9, *id*. at 17. The Appeals Council declined to review the decision, *id*. at 4-6, making it the final decision of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

      The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health*

2

*& Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

The plaintiff first argues that "vocational expert testimony was required in this case to satisfy the Commissioner's burden of proof due to the presence of nonexertional limitations." Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 11) at 12. He cites *Heggarty v. Sullivan*, 947 F.2d 990 (1st Cir. 1991), in support of his position. *Id*. at 12-13. The First Circuit did say, in that case: "If the occupational base is significantly limited by a nonexertional impairment, the Secretary [now the commissioner] may not rely on the Grid to carry the burden of proving that there are other jobs a claimant can do. Usually, testimony of a vocational expert is required." *Id*. at 996 (citation omitted). However, the plaintiff's assertion, Itemized Statement at 12-13, that "the ALJ's own findings" demonstrate such a significant limitation by saying that the plaintiff's residual functional capacity for light work was "reduced only slightly by nonexertional limitations that made if difficult for him to do high stress work, do work which required constant interaction with others, or do work which did not allow him reasonable access to a bathroom," Record at 16, is conclusory and ignores the

3

obvious attempt by the administrative law judge to express his finding that these nonexertional limitations have only a slight limiting effect on the occupational base, that is, one that is less than significant.

The administrative law judge complicates the matter, however, by stating that he "used [the Grid] as a framework for decision-making." Record at 16. As the plaintiff points out, Itemized Statement at 13, when that is done, there is an implication that the impact of the noted nonexertional impairments is more than slight, because the Grid is to be used directly only when such an impact is not significant. *See Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994). However, when the Grid is used as a framework the administrative law judge must either consult a vocational expert, *Burgos Lopez v. Secretary of Health & Human Servs.*, 747 F.2d 37, 42 (1st Cir. 1984), or demonstrate ample support in the record for the proposition that the significant nonexertional impairment at issue nonetheless only marginally reduces the occupational base, *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524-26 (1st Cir. 1989). No vocational expert testified at the hearing in this case. I see little or no evidence in the record of this case, and specifically in the administrative law judge's opinion, to suggest that he in fact used the Grid only as a framework for decision-making. *See generally Brown v. Barnhart*, 2006 WL 3519308 (D. Me. Dec. 6, 2006), at *4 (although administrative law judge's opinion stated she used Grid as framework, she must have relied solely on Grid in case where no vocational expert was present at hearing). I find it more likely, given the tone of the opinion and the lack of testimony from a vocational expert, that the administrative law judge found the nonexertional impairments at issue to have only a marginal effect on the light occupational base and therefore will consider only whether there is substantial evidentiary support in the record for that proposition.

In this case, the administrative law judge found three "slight" nonexertional limitations: inability to do "high stress work," work that required constant interaction with others[2] and work that did not allow him reasonable access to a bathroom.  Record at 15.  The third condition is modified by another finding: "[T]he record does not substantiate a finding that the claimant had frequent, uncontrollable bowel movements that would have prevented him from engaging in work activity on a sustained basis." *Id*.  Thus, it appears to be clear that the third restriction would have very little effect on the light occupational base.  *See* Social Security Ruling 83-14, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 47.  The same can be said of a restriction to jobs that do not require "constant" interaction with others.  This is not, as counsel for the plaintiff characterized it at oral argument, the equivalent of a restriction to "no frequent interaction with others."[3]  It simply is not possible that most jobs assigned to the light exertional level would require constant interaction with others.  *See, e.g., Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991) §§ 206.387-022, 206.387-034, 209.562-010, 209.687-026, 245.362-010, 323.687-014, 361.687-014, 369.687-918, 529.686-014, 583.686-018, 641.685-074.

The problem is the first restriction.  What is "high stress work?"  The administrative law judge's opinion does not discuss any basis for this finding, so a reviewing court is at a loss in any attempt to determine the meaning of the term and, from that, its frequency in the light exertional occupational base.  Here, the administrative law judge has not even begun to "back" his necessarily implied finding that the first restriction has a negligible effect on the occupational base.  *See Seavey v. Barnhart*, 276 F.3d 1, 6-7 (1st Cir. 2001).  Counsel for the commissioner argued that, because the ban

---

[2] *But see Cough v. Barnhart*, 2004 WL 390950 (D. Me. Mar. 3, 2004), at *1 & *3 (finding that claimant could not do work that involved "constant contact" with co-workers, supervisors or the public overstated residual functional capacity where state-agency reviewer found him moderately limited in ability to interact appropriately with general public).

[3] Counsel for the commissioner contended creatively at oral argument that light work involves working with things more than with people, citing section 202.00(b) of the Grid.  I can read no such limitation into the field of light work based on that regulation, which (*continued on next page*)

on high stress jobs and those that require constant interaction with others stems from a mental impairment which the administrative law judge found not to be severe, the record "strongly suggests" that limitations deriving from such a source will not significantly erode the occupational base. However, the First Circuit in *Lancellotta v. Secretary of Health & Human Servs.*, 806 F.2d 284 (1st Cir. 1986), precludes such an interpretation. In that case, a medical expert testified that the claimant could perform "non-stressful work activity," and a vocational expert testified that between 100,000 and 200,000 low-stress jobs existed in the national economy. *Id*. at 285. The First Circuit reversed the decision denying the claimant benefits because

> the ALJ did not explain what differences exist between Lancellotta's prior work and the available "low-stress" jobs that would enable him to perform the latter when he cannot perform the former. The ALJ made no findings on the nature of Lancellotta's stress, the circumstances that trigger it, or how those factors affects his ability to work. . . . [S]tress is not a characteristic of a job, but instead reflects an individual's subjective response to a particular situation. Thus, even if most individuals would not find it particularly stressful to do the jobs listed in the ALJ's decision, we have no evidence showing that Lancellotta . . . would react the same way. Without an evaluation of Lancellotta's vocational abilities in light of his anxiety disorder, there is no basis for the ALJ's conclusion that he can perform low stress work.

*Id*. Remand is required on this basis.

I will briefly discuss the other issues raised by the plaintiff. He contends that the administrative law judge was required to consult a psychological expert at the hearing to determine whether the date of onset of the mental impairments diagnosed by Brian Rines, Ph.D., who saw the plaintiff twice in October 2006 at the request of his attorney, Record at 240, preceded his date last insured, Itemized Statement at 14-17. Specifically, he asserts that "the record documents that Mr. MacFarlane was diagnosed with recurrent, moderate major depression in April 2003 . . . and that he

---

refers to "substantial numbers of unskilled jobs" within the occupational base for light work. Counsel did not cite, and I am unaware of, any regulation or ruling that equates unskilled jobs with a particular degree of interaction with the public.

6

was taking antidepressants in January 2005[.]" Id. at 15.[4] He then cites Social Security Ruling 83-20 and quotes language concerning "impairments which are chronic and progressive" and "slowly progressive impairments" without making any attempt to show that "recurrent, moderate major depression" is progressive by nature. *Id*. at 15-16. He contends that the April 2003 and January 2005 evidence of depression, when combined with Dr. Rines's failure to mention at all whether any of the impairments he diagnosed in 2006 was present between January 1, 2003 and December 31, 2004 — let alone whether any such impairment was severe at that time, which is what the claimant has to establish — makes "the evidence regarding onset . . . ambiguous," and then cites case law for the proposition that a medical advisor must be consulted when the onset date of an impairment is ambiguous. *Id*. at 15-16. But there is no ambiguity with respect to the onset date of any severe depression in the administrative law judge's decision. To the contrary, Record at 13-14, the administrative law judge cited the records of the licensed clinical social worker who treated the claimant in 2003 and reported as of April 1, 2003 that he was improved, not interested in continued treatment or medication for depression and was feeling better, *id*. at 196, and he used the "B" criteria of the Listings to support his conclusion that the depression was not severe at the relevant time, as well as the relevant reports from the plaintiff's primary care physician, *id*. at 130, 145. There is sufficient evidence in the record to support the administrative law judge's reasoning and conclusion. The plaintiff takes nothing from this argument.

The plaintiff's final claimed error is a general assertion that the physical residual functional capacity assigned by the administrative law judge is not supported by substantial evidence. Itemized Statement at 17-18. He contends that there is no medical evidence in the record to support a residual

---

[4] The two pages of the record cited by the plaintiff in support of this assertion, 110 and 197, Itemized Statement at 15, do not support it. Counsel for the plaintiff corrected the citations at oral argument to pages 197-98, but those pages only support the assertion that the plaintiff was diagnosed in 2003 with recurrent, moderate "major" depressive disorder, not that he was taking antidepressants at that
(*continued on next page*)

functional capacity for light work. *Id*. at 17. He begins by stating, *id*., that the state agency medical reviewers "did not complete any RFC assessments," which is incorrect. Both of the state reviewers completed Physical Residual Functional Capacity Assessment forms in which they found that no exertional limitations had been established, Record at 189, 200, and both stated their reasons for this conclusion, *id*. at 195, 206. In this case, the plaintiff presents a conclusory argument: none of the medical evidence supports a capacity for light exertion. He does not suggest what exertional level the medical evidence *does* support. The administrative law judge discussed his reasons for discounting the plaintiff's testimony as to the degree of limitation caused by his physical impairments, *id*. at 14-15, and noted that the state agency reviewers had concluded that the plaintiff had no severe physical impairments at the relevant time, *id*. at 15. He then stated that he would "give the claimant benefit of doubt by finding that his physical impairments possibly limited him to light work as of" December 31, 2004. *Id*. Strictly speaking, the plaintiff is correct in his assertion that the administrative law judge's assignment of a light exertional level is not supported by the medical evidence of record. However, this error can only be harmless as it was obviously more favorable to the plaintiff than would be the implied alternative finding that the plaintiff in fact did not suffer from any severe physical impairments or limitations. The plaintiff takes nothing by this argument.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum*

---

or any other time.

8

*and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 5th day of March, 2008.

                                    <u>/s/ David M. Cohen</u>
                                    David M. Cohen
                                    United States Magistrate Judge